UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCIS BUTRY, CORI FRAUENHOFER, SANDRA TABAR, and JAELYSABEL VILLASANTE, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>   - against -<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; NATIONAL COLLEGIATE, STUDENT LOAN TRUST 2006-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP,<br><br>            Defendants. | **ORDER**<br><br>20 Civ. 5843 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

In this putative class action, Plaintiffs claim that Defendants attempted to collect student loans from them and similarly situated consumers in violation of the Fair Debt Collection Practices Act ("FDCPA"), the New York General Business Law ("GBL") § 349, and the New York Judiciary Law § 487. Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs' claims are time-barred. (Def. Mot. (Dkt. No. 37))[1]

---

[1] Unless otherwise noted, all docket citations are to the docket in Butry v. Nat'l Collegiate Student Loan Tr. 2005-3, No. 20 Civ. 5843 (PGG). All references to page numbers correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

For the reasons stated below, Defendants' motion to dismiss will be granted.

## BACKGROUND[2]

### I.    FACTS[3]

#### A.    The Parties

Plaintiffs Francis Butry, Cori Fraunhofer, Sandra Tabar, and Jaelysabel Villasante are New York residents and holders of student loan debt.  (Cmplt. (Dkt. No. 1) ¶¶ 23-26)

Defendants are student loan trusts, their servicing agents, and a law firm retained by the trusts.  (Id. ¶¶ 2, 27-33)  National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2007-1, and National Collegiate Student Loan Trust 2007-3 (the "Trust Defendants") are Delaware statutory trusts that do business in New York.  (Id. ¶¶ 27-30)  The Trust Defendants hold a combined 20,633 loans made to New York consumers, with the principal loan amounts totaling over $242 million.  (Id.)  The Trust Defendants "service" the loans, which includes suing consumers who fail to make scheduled payments.  (Id. ¶ 2)  Defendant NCO Financial Systems, Inc. ("NCO") – currently doing business as EGS Financial Care, Inc. ("EGS") – was the Trust Defendants' servicing agent until November 3, 2014.  (Id. ¶¶ 31-32)  Defendant Transworld Systems, Inc. ("Transworld") succeeded EGS in that role.  (Id. ¶ 31)  The servicing agents maintain "a nationwide network of debt-collection law firms" – including Defendant Forster & Garbus LLP

---

[2]  The background facts are set forth in greater detail in the October 11, 2019 Dismissal Order in Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2, 419 F. Supp. 3d 668, 679-85 (S.D.N.Y. 2019), which involves a related trust, and are only summarized below.  Familiarity with the Dismissal Order is assumed.

[3]  The Court's factual statement is drawn from the Complaint.  Well-pled facts in a complaint are presumed true for purposes of resolving a motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

("Forster") – "through which [they] coordinate[] and implement[] collection on National Collegiate's behalf." (Id. ¶¶ 33, 51)

Plaintiffs were each sued by one of the Trust Defendants – acting through Forster – in state court debt collection proceedings initiated between 2013 and 2014. (Id. ¶¶ 67, 101, 135)

**B.    *Seaman* and *Bifulco* Actions**

Litigation regarding National Collegiate Student Loan Trusts has proceeded before this Court since 2018. See Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2, 18 Civ. 1781; Bifulco v. Nat'l Collegiate Student Loan Tr. 2004-2, 18 Civ. 7692.

The Seaman class action was filed on February 27, 2018. (See 18 Civ. 1781, Dkt. No. 1 (Seaman Cmplt.)) In that case, three borrowers sued two National Collegiate Student Loan Trusts as well as the same servicing agents and law firm named in the instant action. (Id. ¶¶ 1, 21-28) The Seaman complaint was amended on September 14, 2018 to include as a plaintiff Sandra Tabar, who is also a named plaintiff here. (Id., Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 25, 114-55) Plaintiff Jaelysabel Villasante is not named in the Seaman complaints but is referenced as a co-defendant in related state court debt collection proceedings. (Id. ¶ 114)

The Bifulco class action was filed on August 23, 2018. (See 18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.)) In Bifulco, Francis Butry and Cori Fraunhofer – two of the named plaintiffs here – and another individual sued two National Collegiate Student Loan Trusts, as well as the same servicing agents and law firm named in the instant action. (Id. ¶¶ 21-28)

Seaman and Bifulco plead claims under the Fair Debt Collection Practices Act and state law, and challenge defendants' practices in trying to collect on student loans. In both cases, plaintiffs claim that defendants used a "variety of illegal tricks" in pursuing collection suits on debts that are "too old" to be collectible and that do not have supporting chain-of-title

documents evincing "ownership" of the loans.  (18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.)

¶¶ 1, 5-7; 18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.) ¶¶ 1, 5-7)  According to the Seaman and

Bifulco plaintiffs, defendants obtained default judgments in state court actions through the filing

of complaints and affidavits that contained numerous falsehoods, including that defendants'

employees had personal knowledge of the account records and the consumers' debts, when in

reality, defendants' court filings were "auto-generated and robosigned" by "non-attorney[s]."

(18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 12, 17, 55-56, 62; 18 Civ. 7692, Dkt. No. 1

(Bifulco Cmplt.) ¶¶ 11, 16, 54-55, 61)

      In a July 17, 2017 article – published before the Seaman and Bifulco complaints

were filed – The New York Times reported that the National Collegiate trusts were

"systematic[ally] unab[le] to produce proof" that they own the loans they try to collect on.  (18

Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 157-60; 18 Civ. 7692, Dkt. No. 1 (Bifulco

Cmplt.) ¶¶ 154-57)  The Times had interviewed Donald Uderitz – the "beneficial owner" of the

National Collegiate trusts – in connection with the article, and reported that he had stated that

"an audit of Transworld" – premised on a random sample of 400 loans – revealed that

Transworld had not maintained necessary "paperwork evidencing the chain of ownership" of

each loan.  (18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶ 159; 18 Civ. 7692, Dkt. No. 1

(Bifulco Cmplt.) ¶ 156)

      On September 18, 2017, the Consumer Financial Protection Bureau ("CFPB")

announced that it had entered into a $21.6 million settlement with Transworld and several

National Collegiate trusts to resolve allegations that they had "prosecut[ed] illegal debt-

collection lawsuits."  (18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 4, 161-63; 18 Civ.

7692, Dkt. No. 1 (Bifulco Cmplt.) ¶¶ 4, 158-60; see Proposed Consent Judgment, Consumer Fin.

Prot. Bureau v. Nat'l Collegiate Master Student Loan Trust et al., No. 17 Civ. 1323 (UNA) (D. Del. Sept. 18, 2017) (Dkt. No. 3-1); Consent Order, In re Transworld Sys., Inc., Admin. Proc. No. 2017-CFPB-0018 (Consumer Fin. Prot. Bureau Sept. 18, 2017) (Dkt. No. 1))[4]

The CFPB concluded that the servicing agents "filed at least 1,214 collections lawsuits against consumers even though the documentation needed to prove they owned the loans was missing," and that they "knew, or their processes should have uncovered, that these . . . documents were missing or flawed." (18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 163, 165; 18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.) ¶¶ 160, 162) The CFPB further concluded that non-lawyers at Transworld filed false affidavits to obtain default judgments, "sw[earing] that they had personal knowledge of the education loan records evidencing the debt," when they had no such knowledge. (Id.)

In their respective complaints, the Seaman and Bifulco plaintiffs contend that they "did not know, and could not have known, essential elements of their claims until the publication of the CFPB's findings [on September 18, 2017]." (18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶ 191; 18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.) ¶ 188)

On March 9, 2018, the National Collegiate trusts sued their servicing agents in the Delaware Court of Chancery, attributing the "rampant fraud[ulent]" collection activity to the servicing agents' "miserabl[e]" performance. (18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 167-69; 18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.) ¶¶ 164-66; see also Nat'l Collegiate Master Student Loan Trust I v. U.S. Bank Nat'l Assoc., No. 2018-167 (Del. Ch.) (the "Delaware

---

[4] The Court takes judicial notice of the filings made in the CFPB and District of Delaware proceedings "to establish the fact of such litigation and related filings." Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991); see also Campanelli v. Flagstar Bancorp, Inc., No. 19 Civ. 7299 (PAE), 2020 WL 5350245, at *7 (S.D.N.Y. Sept. 4, 2020) (taking judicial notice of filings in CFPB proceeding).

Action"))  In the <u>Seaman</u> and <u>Bifulco</u> complaints, plaintiffs contend that "the Delaware Action adopts and expounds [on] the CFPB's investigative findings" by "explain[ing] how [the] collection suits were prosecuted against consumers."  (18 Civ. 1781, Dkt. No. 60 (<u>Seaman</u> Am. Cmplt.) ¶ 169; 18 Civ. 7692, Dkt. No. 1 (<u>Bifulco</u> Cmplt.) ¶ 166)

On August 28, 2018, this Court accepted <u>Bifulco</u> as related to <u>Seaman</u> (Aug. 28, 2018 Minute Entry (Docket Report for 18 Civ. 7692)), and in an November 29, 2018 order, the Court directed that these cases be consolidated under the caption <u>Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2</u>.  (18 Civ. 1781, Dkt. No. 73 (Nov. 29, 2018 Order))

On January 18, 2019, the <u>Seaman</u> defendants moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and on January 25, 2019, the <u>Bifulco</u> defendants moved to dismiss on the same grounds.  (<u>Id.</u>, Dkt. No. 80 (<u>Seaman</u> Jan. 18, 2019 Mot. to Dismiss Br.); 18 Civ. 7692, Dkt. No. 37 (<u>Bifulco</u> Jan. 25, 2019 Mot. to Dismiss Br.))  In moving to dismiss, defendants argued, <u>inter alia</u>, that plaintiffs' FDCPA claims are time-barred by the applicable one-year statute of limitations.  (18 Civ. 1781, Dkt. No. 80 (<u>Seaman</u> Jan. 18, 2019 Mot. to Dismiss Br.) at 33-38; 18 Civ. 7692, Dkt. No. 37 (<u>Bifulco</u> Jan. 25, 2019 Mot. to Dismiss Br.) at 10-11)

In a September 30, 2019 order, this Court granted in part and denied in part defendants' motions to dismiss.  (18 Civ. 1781, Dkt. No. 107 (Sept. 30, 2019 Order); <u>Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2</u>, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) (the "Dismissal Order"))  While acknowledging that "[i]t is undisputed" that these lawsuits were initiated after the statute of limitations had expired, the Court found that plaintiffs had sufficiently alleged that defendants' misrepresentations in their complaints and affidavits were "inherently self-

concealing," such that the FDCPA statute of limitations was equitably tolled.  Dismissal Order,

419 F. Supp. 3d at 687, 696-97 (citing 15 U.S.C. § 1692k(d)).

In a December 3, 2019 order, this Court noted that the <u>Seaman</u> and <u>Bifulco</u>

actions had been consolidated in November 2018, and that the operative complaints were

functionally identical.  Given these circumstances, the Court directed the parties to file a

Consolidated Complaint.  (18 Civ. 1781, Dkt. No. 122 (Dec. 3, 2019 Order) at 2)

The Consolidated Complaint was filed on December 10, 2019 (<u>id.</u>, Dkt. No. 124

(Consol. Cmplt.)), and defines the putative class as

> (a) all persons sued in state-court lawsuits related to the collection of consumer
> debt, (b) in which any Trust Defendant was identified as plaintiff in the
> complaint, (c) within six years of the date of the filing of this action.

(<u>Id.</u> ¶ 36)  The Consolidated Complaint repeats <u>verbatim</u> the allegations set forth in the <u>Seaman</u>

Amended Complaint and the <u>Bifulco</u> Complaint, and asserts the same three causes of action for

violation of (1) the FDCPA, as against the servicing agents and Forster; (2) New York GBL

§ 349, as against all Defendants; and (3) New York Judiciary Law § 487, as against Forster.

(<u>Compare id.</u> ¶¶ 266-85 <u>with</u> 18 Civ. 1781, Dkt. No. 60 (<u>Seaman</u> Am. Cmplt.) ¶¶ 170-89; 18

Civ. 7692, Dkt. No. 1 (<u>Bifulco</u> Cmplt.) ¶¶ 167-86)

On April 28, 2020, this Court referred the consolidated action to Magistrate Judge

Barbara C. Moses for general pretrial supervision (Referral Order (Dkt. No. 144)), and the case

proceeded to discovery.

On June 3, 2021, Plaintiffs moved for class certification, pursuant to Rule 23.  (18

Civ. 1781, Dkt. No. 312 (Class Cert. Mot.))

On April 7, 2022, Defendants moved to dismiss, pursuant to Rule 12(b)(1),

arguing that Plaintiffs lack standing to pursue their claims.  (<u>Id.</u>, Dkt. No. 371 (Apr. 7, 2022 Mot.

to Dismiss))

7

In a September 27, 2023 order, this Court denied Defendants' motion to dismiss to the extent that Plaintiffs' FDCPA, GBL § 349, and Judiciary Law § 487 claims are predicated on allegations that Plaintiffs were subjected to "sham" debt collection lawsuits.[5]  <u>Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2</u>, No. 18 Civ. 1781 (PGG) (BCM), 2023 WL 6290622, at *17 (S.D.N.Y. Sept. 27, 2023).  This Court also certified the following class, pursuant to Rule 23(b)(3):

> all persons who have been sued in New York State court debt collection lawsuits from November 1, 2012 through February 27, 2018, where the plaintiff was one of the Trust Defendants, with TSI-NCO acting as servicing agent and Forster as plaintiff's counsel, and where a default judgment was obtained, but excluding any individual who appeared in state court to defend themselves and against whom the Trust Defendant named as plaintiff was awarded a judgment on the merits.

<u>Id.</u> at *20, 27-32 (adopting Judge Moses' R&R (Dkt. No. 423) at 67-68).  This Court also appointed Plaintiffs K. Seaman, M. Seaman, Tabar, Butry, Bifulco, and Frauenhofer as class representatives, and Frank LLP as class counsel.  <u>Id.</u> (citing R&R (Dkt. No. 423) at 68).

The <u>Seaman</u>-<u>Bifulco</u> consolidated action remains pending.

## II.    <u>PROCEDURAL HISTORY</u>

The Complaint in the instant action was filed on July 28, 2020.[6]  (Cmplt. (Dkt. No. 1))

---

[5]  This Court dismissed Plaintiffs' FDCPA, GBL § 349, and Judiciary Law § 487 claims to the extent they are predicated on false representations made by the debt collection attorneys and affiants in the underlying collection actions, because plaintiffs had not alleged a concrete injury sufficient to establish standing.  <u>Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2</u>, No. 18 Civ. 1781 (PGG) (BCM), 2023 WL 6290622, at *17-20 (S.D.N.Y. Sept. 27, 2023).

[6]  In initiating this action, the <u>Butry</u> Plaintiffs filed a statement of relatedness representing that <u>Butry</u> is related to <u>Seaman</u>, 18 Civ. 1781 (PGG).  (Pltf. Stmt. of Relatedness (Dkt. No. 3) at 2) (stating that <u>Butry</u> and <u>Seaman</u> "concern the same or substantially similar parties . . . or events" and involve "substantial factual overlap")  On August 11, 2020, this Court accepted <u>Butry</u> as related to <u>Seaman</u>.  (Aug. 11, 2020 Minute Entry (Docket Report for 20 Civ. 5843))

The <u>Butry</u> Complaint's factual allegations largely repeat the factual allegations in

the <u>Seaman-Bifulco</u> Consolidated Complaint.  (<u>Compare</u> Cmplt. (Dkt. No. 1) ¶¶ 208-31 <u>with</u> 18

Civ. 1781, Dkt. No. 124 (Consol. Cmplt.) ¶¶ 252-65)  The <u>Butry</u> Plaintiffs allege that

Defendants' collection actions are part of a "fraudulent scheme to make false representations to

consumers and in court filings . . . to obtain payments on debts that they cannot prove they are

owed." (Cmplt. (Dkt. No. 1) ¶ 1)  <u>Butry</u> is filed as a putative class action.  (<u>Id.</u> ¶¶ 35-41)

The <u>Butry</u> Complaint adds the following new allegations:

(1) on January 6, 2020, James Cummins – a former Transworld employee –
    submitted an affidavit to the CFPB, "in which he detailed systemic
    misconduct" by his managers at Transworld.  For example, he said that he was
    "directed by management to . . . [f]alsely testify . . . in state court that the
    amounts of money disbursed to consumers through student loans . . . were
    greater than the amounts actually reflected in National Collegiate's records"
    (<u>id.</u> ¶ 223);

(2) in February 2020 – during discovery in the <u>Seaman</u> action – Bradley Luke
    was deposed as the Rule 30(b)(6) designee for Transworld and the <u>Seaman</u>
    trusts.  Luke testified that "it was corporate policy . . . <u>not</u> to review chain-of-
    assignment documentation before [agents] sign[ed] state-court affidavits" that
    resulted in default judgments (<u>id.</u> ¶¶ 224-25) (emphasis in original);

(3) in the spring of 2020 – during discovery disputes in <u>Seaman</u> – the <u>Seaman</u>
    plaintiffs demanded that defendants produce a glossary defining "codes" that
    were used by a National Collegiate servicer.  (<u>Id.</u> ¶¶ 34, 228)  According to
    the <u>Seaman</u> plaintiffs, the servicer – Pennsylvania Higher Education
    Assistance Agency – transmitted information about consumers' debts to
    Transworld through the use of such "codes."  (<u>Id.</u> ¶¶ 228-30)  In a May 6,
    2020 letter to Judge Moses, Transworld represented that it did not possess
    such a glossary.  (<u>Id.</u> ¶ 228)  The Complaint in the instant action contends that
    – absent such a glossary – "it is not possible for National Collegiate Trusts to
    understand the alleged events underlying a consumer's alleged indebtedness"
    (<u>id.</u> ¶ 229), which "proves" that all state-court affidavits – wherein Transworld
    employees testified they had "personal knowledge" of the relevant account
    records – "were false and misleading."  (<u>Id.</u> ¶¶ 230-31)

The <u>Butry</u> Complaint pleads the same three claims alleged in the <u>Seaman</u>-<u>Bifulco</u>

Consolidated Complaint:  violations of (1) the FDCPA as against the servicing agents and

Forster for "making false and misleading representations, using deceptive means, and engaging

in unfair and abusive practices" (id. ¶¶ 232-41); (2) New York GBL § 349 as against all Defendants for "deceptive and materially misleading" acts and omissions directed to consumers (id. ¶¶ 242-47); and (3) New York Judiciary Law § 487 as against Forster for "conduct with the intent to deceive consumer[s]" and "New York courts." (Id. ¶¶ 248-51)  The Butry Complaint seeks the same statutory and actual damages, and injunctive relief, as that sought in the Consolidated Complaint.  (Id. at 54-55, ad damnum clause)

       The Butry class is defined the same as the Seaman class, except that the scope of the class is widened to include consumers sued by the Trust Defendants "in state-court lawsuits related to the collection of consumer debt . . . within ten years of the date of the filing of this action" (id. ¶ 35), as opposed to the six-year period specified in the Seaman-Bifulco Consolidated Complaint.  (18 Civ. 1781, Dkt. No. 124 (Consol. Cmplt.) ¶ 36)

       In sum, the parties in the instant action and in Seaman-Bifulco are either closely related or identical; the claims are identical; the relief sought is identical; and the class definitions are nearly identical.

       On November 5, 2021, Defendants in the instant action moved to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiffs' claims are time-barred.  (Def. Br. (Dkt. No. 38) at 12-20)  Defendants also contend that Plaintiffs' GBL § 349 claim is preempted by the Fair Credit Reporting Act.  (Id. at 20-21)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss

       "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss, "the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." <u>Kassner</u>, 496 F.3d 229 at 237.  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Port Dock & Stone Corp. v. Oldcastle Northeast Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." <u>Iqbal</u>, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and 'documents upon which the complaint relies heavily.'" <u>Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y.</u>, 678 F.3d 184, 187 (2d Cir. 2012) (quoting <u>In re Citigroup ERISA Litig.</u>, 662 F.3d 128, 134 (2d Cir. 2011)).

### B.    <u>Equitable Tolling</u>

Equitable tolling "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." <u>Johnson v. Nyack Hospital</u>, 86 F.3d 8, 12 (2d Cir. 1996); <u>see</u> <u>Menominee Indian Tribe v. United States</u>, 577 U.S. 250, 255 (2016) (same).  A litigant who has been "induced by fraud, misrepresentations or deception to refrain from filing a timely action" may invoke the doctrine of equitable tolling, <u>Abbas v. Dixon</u>, 480 F.3d 636, 642 (2d Cir. 2007) (citation and internal quotation marks omitted), but "only if the litigant establishes two elements:  '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" <u>Menominee Indian Tribe</u>, 577 U.S. at 255 (quoting <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010)).

As to the first element, the party seeking equitable tolling must "show diligent pursuit of his claim 'throughout the period he seeks to toll.'"  Harper v. Ercole, 648 F.3d 132, 139 (2d Cir. 2011) (emphasis omitted) (quoting Belot v. Burge, 490 F.3d 201, 205 (2d Cir. 2007)).

As to the second element, "[t]he term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Id. at 137 (citation omitted).  "To show that extraordinary circumstances prevented . . . filing  . . . on time, [a plaintiff] must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (citation and internal quotation marks omitted).  An example of an extraordinary circumstance is where "a plaintiff establishes that:  (1) the defendant concealed from him the existence of his cause of action; [and] (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action."  Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (citing State of N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1083 (2d Cir. 1988)).

"Because statutes of limitations protect important social interests in certainty, accuracy, and repose, equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances."  A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011) (internal citations, quotation marks, and alterations omitted).  Indeed, the Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling."  Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011).  The issue "'is not whether [p]laintiff was in possession of all of the information necessary to prevail on his claims, but

whether [p]laintiff had enough information to commence a lawsuit.'" De Sole v. Knoedler

Gallery, LLC, 974 F. Supp. 2d 274, 318 (S.D.N.Y. 2013) (quoting Statler, D.C. v. Dell, Inc., 775

F. Supp. 2d 474, 483 (E.D.N.Y. 2011)).

      If the diligence and extraordinary circumstances requirements are met

"throughout the period to be tolled," then "the statute of limitations is suspended for the duration

of the extraordinary circumstances supporting tolling." Harper, 648 F.3d at 136, 139. The

statute of limitations may not be tolled "in perpetuity," however. Veltri v. Bldg. Serv. 32B-J

Pension Fund, 393 F.3d 318, 325-26 (2d Cir. 2004). Once the extraordinary circumstances that

justify tolling end – for example, when the fraud was or should have been discovered by plaintiff

– then the "link of causation between the extraordinary circumstances and the failure to file is

broken." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). This rule reflects the fact that

"'[d]ue diligence on the part of a plaintiff in bringing [an] action' . . . [is] an essential element of

equitable relief.'" Abbas, 480 F.3d at 642 (citing Doe v. Holy See, 17 A.D.3d 793, 794 (3d

Dept. 2005)). To permit "tolling to continue beyond [a] point [when plaintiffs become aware of

their cause of action] would be inequitable and inconsistent with the general purpose of statutes

of limitations: 'to protect defendants against stale or unduly delayed claims.'" Credit Suisse

Sec. LLC v. Simmonds, 566 U.S. 221, 211, 227 (2012) (emphasis in original) (quoting John R.

Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008)).

      Once equitable tolling ends, the statute of limitations is not reset "anew." Harper,

648 F.3d at 141 (equitable tolling "simply restarts the limitations clock where it was stopped by

equity") (citing Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001)); see Tristar Corp. v. Freitas,

84 F.3d 550, 553 (2d Cir. 1996) ("Equitable tolling of a statute means only that the running of

the statute is suspended, not that the limitations period begins over again.") (citation omitted).

However, "the tolling period 'must be sufficient to permit the filing [of a complaint] on or before

the earliest date after the [extraordinary circumstances] by which time [plaintiff], acting with

reasonable diligence, should have filed his or her [lawsuit].'" Harper, 648 F.3d at 140-41

(quoting Valverde, 224 F.3d at 134); see Abbas, 480 F.3d at 642 (requiring a plaintiff to establish

that the action "was brought within a reasonable period of time" after he or she is aware of a

possible claim).

## II.    ANALYSIS

### A.    Applicable Statutes of Limitations

As discussed above, the Complaint asserts (1) an FDCPA claim against the

servicing agents and Forster; (2) a GBL § 349 claim against all Defendants; and (3) a Judiciary

Law § 487 claim against Forster. (Cmplt. (Dkt. No. 1) ¶¶ 232-51)

The statute of limitations for FDCPA claims is "one year from the date on which

the violation occurs." See 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by

this subchapter may be brought in any appropriate United States district court . . . within one year

from the date on which the violation occurs.").

The statute of limitations for GBL § 349 claims is three years from the date

"when [a] plaintiff has been injured by a deceptive act or practice." Gaidon v. Guardian Life Ins.

Co. of Am., 96 N.Y.2d 201, 210 (2001); N.Y. C.P.L.R. § 214(2) ("an action to recover upon a

liability, penalty or forfeiture created or imposed by statute" "must be commenced within three

years").

The statute of limitations for attorney deceit claims under Judiciary Law § 487 is

six years from the date of injury. Melcher v. Greenberg Traurig, LLP, 23 N.Y.3d 10, 15 (2014)

(stating that Judiciary Law § 487 claims "are subject to the six-year statute of limitations in

[N.Y. C.P.L.R. §] 213(1)"); N.Y. C.P.L.R. § 213(1) (governing "action[s] for which no limitation is specifically prescribed by law").

The Complaint contends that, as a result of Defendants' "fraudulent scheme," Plaintiffs were "sue[d]" and had default judgments entered against them. (Cmplt. (Dkt. No. 1) ¶ 1) Final default judgments were entered as to (1) Fraunhofer on January 3, 2014 (id. ¶ 131); (2) Butry on March 5, 2014 (id. ¶ 97); and (3) Tabar and Villasante on May 27, 2014 (id. ¶¶ 183, 196).[7] Accordingly, under the statutes of limitations discussed above, Plaintiffs' FDCPA claims expired in 2015; Plaintiffs' GBL § 349 claims expired in 2017; and Plaintiffs' Judiciary Law § 487 claims expired no later than May 27, 2020. Given that the Complaint was not filed until July 28, 2020, all of Plaintiffs' claims are – absent equitable tolling – time-barred.

### B.     Whether Equitable Tolling Applies

Plaintiffs contend that "extraordinary circumstances" prevented them from timely filing their claims, and accordingly, equitable tolling applies to each of their claims.[8] (Id. ¶¶

---

[7] To the extent that Plaintiffs argue that the limitations period should be measured from "late 2019" – because "Defendants continued to prosecute [debt collection] actions" against Tabar and Villasante until that time (Pltf. Opp. (Dkt. No. 39) at 14) – this argument is not persuasive. The Complaint does not plead that Defendants continued to prosecute debt collection actions against Plaintiffs until late 2019. The Complaint instead alleges that on April 12, 2018, "Tabar and Villasante applied to the Bronx County Civil Court for orders to show cause to vacate the [default] judgments against them." (Cmplt. (Dkt. No. 1) ¶ 197) After the state court vacated the default judgments (id. ¶ 201), Defendants "failed to respond to [Tabar and Villasante's] discovery demands," and the state court then dismissed both actions. (Id. ¶¶ 203-05) In sum, the Complaint does not allege that Defendants continued to prosecute debt collection actions against Plaintiffs in 2019, and Plaintiffs therefore have not pled an injury that occurred in 2019.

[8] To the extent that Plaintiffs argue that the timeliness of their claims is governed by the discovery rule rather than the equitable tolling doctrine (see Cmplt. (Dkt. No. 1) ¶¶ 252-56), that argument is not persuasive. The discovery rule has the effect of "delay[ing] the date of accrual [of a cause of action] where the plaintiff is blamelessly ignorant of the existence or cause of his injury." Ellul v. Congregation of Christian Bros., 774 F.3d 791, 801 (2d Cir. 2014) (internal citations and quotations omitted). By contrast, equitable tolling applies "after the claim has

257-59)  According to Plaintiffs, "Defendants affirmatively concealed from Plaintiffs . . . the fraudulent scheme," such that Plaintiffs "could [not] have discovered, even upon reasonable exercise of diligence, that Defendants had secured default judgments against them through the fraudulent scheme."  (Id. ¶ 257)

As discussed above, Plaintiffs allege in the Complaint that they were sued in state court debt collection actions in which (1) the complaints falsely stated that National Collegiate trusts were authorized to proceed with the action; and (2) Defendants included in their default judgment papers an attorney's affidavit falsely certifying that the attorney had engaged in a meaningful review of the claims asserted.  (Id. ¶¶ 1-18)  These allegations repeat verbatim allegations pled in the Bifulco Complaint (18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.) ¶¶ 1-16), in the Seaman Amended Complaint (18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 1-18), and in the Seaman Consolidated Complaint.  (Id., Dkt. No. 124 (Consol. Cmplt.)) ¶¶ 1-17)  According to Plaintiffs, they had no way of "discover[ing]" that Defendants' attorneys' affidavits

---

already accrued, suspending the statute of limitations to prevent unfairness to a diligent plaintiff."  Id. (internal citations and quotations omitted).

Here, Plaintiffs argue that their claims accrued not when they suffered an injury, but instead when they discovered or should have discovered the alleged fraudulent scheme.  See Cmplt. (Dkt. No. 1) ¶¶ 252-56; see also Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (applying the discovery rule in a non-fraud context).

The Supreme Court has rejected application of the discovery rule in the context of FDCPA claims, however.  See Rotkiske v. Klemm, 589 U.S. 8, 13 (2019) (rejecting an "expansive approach to the discovery rule," and ruling that "[t]he FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened") (citing 15 U.S.C. § 1692k(d)).  And New York state and federal courts have refused to apply the discovery rule to claims brought under GBL § 349 and Judiciary Law § 487.  See Wender v. Gilberg Agency, 276 A.D.2d 311, 312 (1st Dept. 2000) (ruling that the "date of discovery rule is not applicable [to GBL § 349 claims] and cannot serve to extend that limitations period"); Moscati v. Kelly, No. 15 Civ. 4641 (ALC), 2016 WL 3034495, at *6 (S.D.N.Y. May 26, 2016) (ruling that "there is no discovery rule" as to "causes of action sounding in constructive fraud," such as claims brought under Judiciary Law § 487).

were false, and could not have learned of Defendants' misconduct, until "a series of recent public events finally shed a spotlight on Defendants' scheme," beginning with the July 17, 2017 New York Times reporting on Uderitz's admissions concerning "National Collegiate's systematic inability to produce proof of indebtedness," and the CFPB's September 18, 2017 "findings against National Collegiate and Transworld following a years-long investigation." (Cmplt. (Dkt. No. 1) ¶¶ 208, 210, 213, 257-59; 18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.) ¶¶ 155, 158, 190-92; see also 18 Civ. 1781, Dkt. No. 60 (Seaman Am. Cmplt.) ¶¶ 158, 161, 193-95)

For the reasons explained in this Court's October 11, 2019 Dismissal Order concerning the same or closely related parties and the same claims made in the instant case, (1) Defendants' misrepresentations are "inherently self-concealing," such that Plaintiffs' lack of knowledge [prior to 2017] is not attributable to a failure of diligence; and (2) Defendants' misrepresentations in their legal filings constitute an "extraordinary circumstance." See Dismissal Order, 419 F. Supp. 3d at 694, 698-99.[9]

In alleging an FDCPA claim, the Complaint contends that Defendants "ma[de] false and misleading representations, us[ed] deceptive means, and engag[ed] in unfair and abusive practices." (Cmplt. (Dkt. No. 1) ¶ 240) As discussed above, the one-year statute of limitations for each Plaintiff's FDCPA claim began to run on the date of the default judgments entered against them. The last default judgment against Plaintiffs was entered against Plaintiffs Tabar and Villasante on May 27, 2014. (Id. ¶¶ 183, 196) Accordingly – absent equitable tolling

---

[9] While the reasoning in the Dismissal Order is applicable here, the Court's ruling is not driven by the "law of the case" doctrine cited by Plaintiffs. (See Pltf. Opp. (Dkt. No. 39) at 11-12) The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Musacchio v. United States, 577 U.S. 237, 244-45 (2016) (quoting Pepper v. United States, 562 U.S. 476, 506 (2011)). The law of the case doctrine is not applicable here because the ruling Plaintiffs cite was issued in a separate case.

– Plaintiffs' FDCPA claims expired – at the latest – on May 27, 2015.  Because equitable tolling applies, the statute of limitations for the FDCPA claims was tolled until shortly after September 18, 2017, when the CFPB released its investigative report.

       With respect to Plaintiffs' GBL claim – predicated on allegations of the same fraudulent scheme – the three-year statute of limitations expired no later than May 27, 2017. Because equitable tolling applies, the statute of limitations for Plaintiffs' GBL claims was likewise tolled until shortly after September 18, 2017, when the CFPB released its investigative report.

       The analysis is different as to Plaintiffs' Judiciary Law § 487 claim, which is predicated on Forster's alleged "chronic, persistent pattern of conduct with the intent to deceive consumer[s] and multiple New York courts."  (Id. ¶ 250)  The Section 487 claims is subject to a six-year statute of limitations that expired on May 27, 2020.

       As discussed above, the Complaint alleges that – as a result of the July 17, 2017 New York Times article and the September 18, 2017 CFPB report – Plaintiffs became aware of the salient facts regarding Defendants' allegedly fraudulent scheme.  (Id. ¶¶ 208-18)  Given these allegations, by September 2017 – "early in the limitations period" governing Plaintiffs' Judiciary Law claim – "the alleged extraordinary circumstances [justifying equitable tolling] ceased," and Plaintiffs were on notice of their right to sue.  Hizbullahankhamon, 255 F.3d at 75.  Indeed, in 2018 Plaintiffs Butry, Fraunhofer, and Tabar filed suit in Seaman and Bifulco against other National Collegiate trusts.  (See 18 Civ. 1781, Dkt. No. 1 (Seaman Cmplt.); 18 Civ. 7692, Dkt. No. 1 (Bifulco Cmplt.))

       Given (1) the expiration of the six-year limitations period on May 27, 2020; and (2) the fact that the Complaint in the instant case was not filed until July 28, 2020 – nearly three

18

years after Plaintiffs were on notice of their right to sue, there is no "causal relationship between the extraordinary circumstances" justifying equitable tolling and the untimely filing of their Judiciary Law § 487 claim.  Hizbullahankhamon, 255 F.3d at 75 (finding claim untimely where petitioner was denied access to legal materials for 22 days at the beginning of the one-year statute of limitations period, but failed to diligently pursue his rights thereafter); see also Adkins v. Warden, 585 F. Supp. 2d 286, 299 (D. Conn. 2008), aff'd, 354 F. App'x 564 (2d Cir. 2009) (noting "'a litigant who learns, or had he been diligent would have learned, all the facts that he would need in order to be able to file his claim while time remains in the limitations period, must file it before the period ends'") (quoting Yuan Gao v. Mukasey, 519 F.3d 376, 378 (7th Cir. 2008)); Veltri, 393 F.3d at 326 ("a plaintiff with actual knowledge of her right to sue may not rely on equitable tolling").

Given that Plaintiffs could have filed a timely Judiciary Law § 487 claim at any point between September 2017 – when they learned of their right to sue – and the expiration of the limitations period on May 27, 2020, equitable tolling does not assist Plaintiffs in salvaging their Judiciary Law claim.  Accordingly, Plaintiffs' Judiciary Law § 487 claims will be dismissed as time-barred.

**C.      The Effect of Equitable Tolling on Plaintiffs' FDCPA and GBL Claims**

Having concluded that equitable tolling applies to Plaintiffs' FDCPA and GBL claims, the Court must determine at what point the "extraordinary circumstances" justifying equitable tolling ended.  Plaintiffs argue that the statutes of limitations were tolled until May 6, 2020, when Transworld submitted a letter in the Seaman-Bifulco action stating that it did not maintain or possess a glossary of codes that it used in communicating with its agent in connection with debt collection efforts.  (Cmplt. (Dkt. No. 1) ¶ 259)

With the release of the CFPB report on September 18, 2017, and after publication of the New York Times article on July 17, 2017, Plaintiffs were aware that Transworld had not maintained the paperwork necessary to show chain of ownership of the student loans, and that more than a thousand collection lawsuits had been filed against consumers that lacked necessary documentation. (Id. ¶¶ 209-18; id. ¶ 208 (alleging that the "public events finally shed a spotlight on Defendants' scheme")) In other words, the "extraordinary circumstances" justifying equitable tolling ended by September 18, 2017, see Dowe v. Leeds Brown L., P.C., 419 F. Supp. 3d 748, 764 (S.D.N.Y. 2019) (finding that, after the facts that plaintiffs relied on "were publicly reported" in The New York Times and Newsweek articles, "plaintiffs could have discovered the facts underlying their claims in the exercise of reasonable diligence"), aff'd sub nom, Dowe v. Leeds, Morelli & Brown PC, No. 21-3069, 2023 WL 3986373 (2d Cir. June 14, 2023), and any further delay in filing suit was caused by Plaintiffs' failure to use reasonable diligence in uncovering the facts. See Harper, 648 F.3d at 139 ("equitable tolling should be . . . circumscribed to the period for which diligence and causation are established").[10]

Because the instant Complaint was not filed until July 28, 2020, and Plaintiffs were on notice of their claims at least by September 18, 2017, Plaintiffs did not bring their FDCPA and GBL claims within "a reasonable period of time" after learning of their right to sue. Equitable tolling thus does not assist Plaintiffs in salvaging their claims.[11] See Abbas, 480 F.3d

---

[10] Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568 (S.D.N.Y. 2011) – cited by Plaintiffs (Pltf. Opp. (Dkt. No. 39) at 12-13) – is not on point. In Coble, the complaint alleged that reports of defendants' fraud were "not available" for public viewing "until this lawsuit was filed." Coble, 824 F. Supp. 2d at 572. Such is not the case here.

[11] Plaintiffs contend that their GBL § 349 claim is timely "because [they] sued fewer than three years" after the CFPB's September 18, 2017 was released. (See Pltf. Opp. (Dkt. No. 39) at 12) As discussed above, however, equitable tolling does not reset the clock on a statutory limitations period. To the contrary, where – as here – the fraud does not "abate" on a particular date,

at 642 (requiring plaintiff to establish that action "was brought within a reasonable period of time" after becoming aware of a possible claim); Simmonds, 566 U.S. at 221 ("Tolling therefore ceases when fraudulently concealed facts are, or should have been, discovered by the plaintiff.").

Plaintiffs do not dispute that their claims are predicated on the same facts set forth in the Seaman-Bifulco Consolidated Complaint (see Pltf. Opp. (Dkt. No. 39) at 11-12), but they argue that – as of 2017 – they did not have "all the knowledge necessary to assert any potential FDCPA claim against Defendants." (Id. at 12) (emphasis in original) According to Plaintiffs, after they filed the Seaman and Bifulco actions, "three separate events in early and mid-2020 shed profound new light on Defendants' scheme, confirming [that] it was worse than the CFPB had described [in its September 18, 2017 announcement]." (Id.) While the CFPB's investigation was "limited" in that it only surveyed "numerous instances" in which Defendants' agents lacked personal knowledge of the account records and the consumers' debts, fact discovery in Seaman-Bifulco had "show[n] that all affidavits [filed in the collection lawsuits] . . . were false and misleading." (Cmplt. (Dkt. No. 1) ¶¶ 217, 227, 231; see id. ¶¶ 226-27 (alleging that Luke's February 2020 deposition "prove[s]" that "all affidavits filed by Defendants [in the collection lawsuits] were false and misleading," and that "CFPB's findings are systemic, rather than intermittent"); id. ¶¶ 230-31 (alleging that "Transworld[]'s admission" that it did not have a glossary used "to understand [its servicer's] records . . . shows that all affidavits such as those used against Plaintiffs were false and misleading"))

As discussed above, however, whether (1) Plaintiffs had "all the knowledge" necessary to file all possible FDCPA claims; or (2) newly obtained information "shed profound

---

Harper, 648 F.3d at 140-41, Plaintiffs must bring their claims "within a reasonable period of time" after the "extraordinary circumstances" end. Abbas, 480 F.3d at 642.

new light" on existing causes of action (Pltf. Opp. (Dkt. No. 39) at 12), is not the relevant inquiry for purposes of determining the end date for equitable tolling. See De Sole, 974 F. Supp. 2d at 318 ("'the issue is not whether [p]laintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit'") (quoting Statler, 775 F. Supp. 2d at 483). The equitable tolling doctrine is premised on equitable principles; it is "intended to provide relief where a plaintiff is not aware of the existence of a cause of action, not where a plaintiff is aware of the cause of action but believes that she may not have sufficient evidence to prove her case." Torre v. Columbia Univ., No. 97 Civ. 0981 (LAP), 1998 WL 386438, at *8 (S.D.N.Y. July 10, 1998), aff'd, 189 F.3d 462 (2d Cir. 1999) (citing cases). Accordingly, the relevant inquiry here – for purposes of determining the end date for equitable tolling – is when Plaintiffs discovered, or could have discovered, Defendants' fraudulently concealed facts.

Based on the allegations of the Complaint, it is clear that Plaintiffs were aware of their right to sue under the FDCPA and the GBL at least by September 18, 2017, when the CFPB report was issued. They did not file their Complaint within a reasonable period of time after that date. Instead, they filed suit on July 28, 2020. Because their delay in filing suit is not reasonable, equitable tolling does not assist Plaintiffs in salvaging their FDCPA and GBL claims, and those claims will be dismissed as time-barred.[12]

---

[12] Given this ruling, the Court does not reach Defendants' argument that Plaintiffs' GBL § 349 claim should be dismissed as preempted by the Fair Credit Reporting Act. (Def. Br. (Dkt. No. 38) at 20-21)

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted.

The Clerk of Court is directed to terminate the motion (Dkt. No. 37), and to close

this case.

Dated: New York, New York
      August 16, 2024

                           SO ORDERED.

                           Paul G. Gardephe
                           United States District Judge