UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

FRANCIS BUTRY, CORI
FRAUENHOFER, SANDRA TABAR, and
JAELYSABEL VILLASANTE, individually
and on behalf of all others similarly situated,

                       Plaintiffs,

         - against -

NATIONAL COLLEGIATE STUDENT
LOAN) CLASS ACTION COMPLAINT
TRUST 2005-3; NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2006-1; NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2007-1;
NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-3; TRANSWORLD
SYSTEMS, INC., in its own right and as
successor to NCO FINANCIAL SYSTEMS,
INC.; EGS FINANCIAL CARE INC.,
formerly known as NCO FINANCIAL
SYSTEMS, INC.; and FORSTER &
GARBUS LLP,

                    Defendants.

**ORDER**

20 Civ. 5843 (PGG)

———————————————————————

PAUL G. GARDEPHE, U.S.D.J.:

        In this putative class action, Plaintiffs claim that Defendants attempted to collect

student loams from them and similarly situated customers in violation of the Fair Debt Collection

Practices Act ("FDCPA"), the New York General Business Law ("GBL") § 349, and the New

York Judiciary Law § 487. Defendants moved to dismiss this case pursuant to Fed. R. Civ. P.

12(b)(6), and this Court granted Defendants' motion on August 16, 2024. (Mot. to Dismiss (Dkt.

No. 37); Aug. 16, 2024 Order (the "Dismissal Order") (Dkt. No. 48))[1]  On August 30, 2024,

Plaintiffs moved for reconsideration, arguing that this Court "misapplie[d] Second Circuit law"

in the Dismissal Order and requesting that – upon reconsideration – this Court "deny[]

Defendants' Rule 12 motion for dismissal." (Mot. for Recon. (Dkt. No. 50); see also Pltf. Recon.

Br. (Dkt. No. 51))  For the reasons stated below, Plaintiffs' motion for reconsideration will be

denied.

## BACKGROUND

I.      FACTS[2]

        Plaintiffs Francis Butry, Cori Frauenhofer, Sandra Tabar, and Jaelysabel Villasante

are New York residents and holders of student loan debt.  (Cmplt. (Dkt. No. 1) ¶¶ 23-26)

Defendants are student loan trusts, their servicing agents, and a law firm retained by the trusts.

(Id. ¶¶ 2, 27-33)  According to the Complaint, "Defendants have engaged in a fraudulent scheme

to make false representations to consumers and in court filings in order to obtain payment on

debts that they cannot prove they are owed. . . . They nevertheless sue consumers, obtain

judgments against them, and extract money from them." (Id. ¶ 1)  Defendants allegedly did so by

filing "baseless state-court collection suits supported by boilerplate, robosigned legal filings that

are unsupported by actual admissible evidence." (Id. ¶ 43)  Plaintiffs were each sued in state

court debt collection proceedings initiated between 2013 and 2014.  (Id. ¶¶ 67, 101, 135)

---

[1]  Unless otherwise noted, all docket citations are to the docket in Butry v. Nat'l Collegiate
Student Loan Tr. 2005-3, No. 20 Civ. 5843 (PGG).  All references to page numbers correspond to
the page numbers designated by this District's Electronic Case Files ("ECF") system.
[2]  The relevant facts and procedural history are set forth in greater detail in the Dismissal Order.
(See Dismissal Order (Dkt. No. 48))  Familiarity with the Dismissal Order is assumed.

In a July 17, 2017 article, The New York Times reported that the National Collegiate trusts were "systematic[ally] unab[le] to produce proof" that they own the loans they try to collect on. (Id. ¶ 210)

On September 18, 2017, the Consumer Financial Protection Bureau (the "CFPB") announced that it had entered into a $21.6 million settlement with Transworld (one of the Defendant loan servicers) and several National Collegiate trusts to resolve allegations that they had "prosecut[ed] illegal debt-collection lawsuits." (Id. ¶ 4 (emphasis removed)) The CFPB concluded that the servicing agents had "filed at least 1,214 collections lawsuits against consumers even though the documentation needed to prove they owned the loans was missing," and that they "knew, or their processes should have uncovered, that these . . . documents were missing or flawed." (Id. ¶ 215 (footnote omitted))

## II. PROCEDURAL HISTORY

The Complaint was filed on July 28, 2020 (Cmplt. (Dkt. No. 1)), and asserts violations of (1) the FDCPA by the servicing agents and Forster & Garbus LLP; (2) GBL § 349 by all Defendants; and (3) New York Judiciary Law § 487 by Forster & Garbus LLP. (Id. ¶¶ 232-251)[3]

On November 5, 2021, Defendants moved to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiffs' claims – which are premised on debt collection efforts made in 2013 and

---

[3] As explained in more detail in the Dismissal Order (see Dismissal Order (Dkt. No. 48) at 3-8), the instant action is related to Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2, 18 Civ. 1781; Bifulco v. Nat'l Collegiate Student Loan Tr. 2004-2, 18 Civ. 7692; and Vice v. Nat'l Collegiate Student Loan Tr. 2004-1, 23 Civ. 6287. Seaman and Bifulco are consolidated under the caption Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2. (18 Civ. 1781, Dkt. No. 73 (Nov. 29, 2018 Order)) On August 11, 2020, this Court accepted the instant action as related to Seaman. (Aug. 11, 2020 Minute Entry (Docket Report for 20 Civ. 5843)) The parties in the instant action and in Seaman are either closely related or identical; the claims are identical; the relief sought is identical; and the class definitions are nearly identical. (Dismissal Order (Dkt. No. 48) at 9-10) The consolidated Seaman action and the Vice action remain pending.

2014 – are time-barred.  (Def. Mot. to Dismiss Br. (Dkt. No. 38) at 12-20)[4]  On August 16, 2024,

this Court granted Defendants' motion to dismiss.  (Dismissal Order (Dkt. No. 48))

In so ruling, this Court found that – absent tolling – "Plaintiffs' FDCPA claims

expired in 2015; Plaintiffs' GBL § 349 claims expired in 2017; and Plaintiffs' Judiciary Law

§ 487 claims expired no later than May 27, 2020."  "Given that the Complaint was not filed until

July 28, 2020, all of Plaintiffs' claims are – absent tolling – time-barred."  (Id. at 15)

In granting Defendants' motion to dismiss, this Court rejected Plaintiffs' argument

that the limitations period should be measured from late 2019, because "'Defendants continued to

prosecute [debt collection] actions' against Tabar and Villasante until that time."  (Id. at 15 n.7

(quoting Pltf. Mot. to Dismiss Opp. (Dkt. No. 39) at 14))  In so ruling, this Court noted that "[t]he

Complaint does not plead that Defendants continued to prosecute debt collection actions against

Plaintiffs until late 2019."  (Id.)

The Complaint instead alleges that on April 12, 2018, "Tabar and Villasante

applied to the Bronx County Civil Court for orders to show cause to vacate the [default]

judgments against them."  (Cmplt. (Dkt. No. 1) ¶ 197)  On June 18, 2018, the Bronx County Civil

Court vacated  the default judgments (id. ¶ 201), and on June 21, 2018, "Tabar and Villasante filed

discovery demands" on Defendants.  (Id. ¶ 202)  "Between August 2018 and May 2019," Tabar

and Villasante "went to Bronx County Civil Court on four occasions for scheduled trial dates,"

but because Defendants had "failed to respond to [Tabar and Villasante's] discovery demands . . .

the matters were adjourned to a later date."  (Id. ¶ 203)  On October 1, 2019, Tabar and Villasante

again appeared in Bronx County Civil Court "for their fifth scheduled trial date," but Defendants

---

[4]  Defendants also argued that Plaintiffs' GBL § 349 claim is preempted by the Fair Credit
Reporting Act.  (Id. at 20-21)  In granting Defendants' motion to dismiss, this Court did not reach
their preemption argument.  (Dismissal Order (Dkt. No. 48) at 22 n.12).

still had not "respond[ed] to [Tabar and Villasante's] discovery demands." As a result, on

October 1, 2019, the Bronx court dismissed the actions brought against Tabar and Villasante. (Id.

¶ 204)

As discussed in the Dismissal Order, these allegations in the Complaint do not

demonstrate "that Defendants continued to prosecute debt collection actions against Plaintiffs in

2019, and Plaintiffs therefore have not pled an injury that occurred in 2019." (Dismissal Order

(Dkt. No. 48) at 15 n.7)

As to Plaintiffs' argument that equitable tolling applies to their FDCPA and GBL

claims, this Court concluded that equitable tolling applies, and that the applicable statutes of

limitations were tolled from May 27, 2014 – the date the last default judgment was entered

against Plaintiffs Tabar and Villasante – "until shortly after September 18, 2017, when the CFPB

released its investigative report." (Id. at 18)

As to Plaintiffs' Judiciary Law § 487 claim, this Court found that

> [g]iven (1) the expiration of the six-year limitations period on May 27, 2020; and
> (2) the fact that the Complaint in the instant case was not filed until July 28, 2020
> – nearly three years after Plaintiffs were on notice of their right to sue, there is no
> "causal relationship between the extraordinary circumstances' justifying equitable
> tolling and the untimely filing of their Judiciary Law § 487 claim."

(Id. at 18-19 (quoting Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001)) The Court

went on to conclude that equitable tolling does not apply to Plaintiff's Judiciary Law § 487

claim.

This Court then considered whether equitable tolling rendered Plaintiffs' FDCPA

and GBL claims timely. The Court concluded that

> [b]ecause the instant Complaint was not filed until July 28, 2020, and Plaintiffs
> were on notice of their claims at least by September 18, 2017, Plaintiffs did not
> bring their FDCPA and GBL claims within "a reasonable period of time" after
> learning of their right to sue. Equitable tolling thus does not assist Plaintiffs in
> salvaging their claims. See Abbas [v. Dixon], 480 F.3d [636,] 642 [(2d Cir. 2007)]

5

(requiring plaintiff to establish that [the] action "was brought within a reasonable period of time" after becoming aware of a possible claim)[.]

(Id. at 20 (footnote omitted))  Accordingly, the Court dismissed Plaintiffs' FDCPA, GBL and Judiciary Law claims as time-barred.  (Id. at 19, 22)

On August 30, 2024, Plaintiffs moved for reconsideration pursuant to Fed. R. Civ. P. 59.  (Mot. for Recon. (Dkt. No. 50); Pltf. Recon. Br. (Dkt. No. 51))  Plaintiffs contend that this Court "wrongly concluded that Plaintiffs Tabar and Villasante 'have not pled an injury that occurred in 2019' through their allegations of having to go back repeatedly to Bronx County Civil Court to fight Defendants' state-court collection suits against them before prevailing there." (Pltf. Recon. Br. (Dkt. No. 51) at 6 (quoting Dismissal Order (Dkt. No. 48) at 15 n.7))  Plaintiffs also argue that this Court "misapplied" Harper v. Ercole, 648 F.3d 132 (2d Cir. 2011).  According to Plaintiffs, pursuant to that case and the "stop-clock" method of calculating the timeliness of claims where equitable tolling applies, "this Court should have found [that] Plaintiffs had three years from the date of the CFPB announcement" to file their claims.  (Pltf. Recon. Br. (Dkt. No. 51) at 4)[5]

---

[5]  In their moving brief, Plaintiffs do not challenge this Court's holding that there is no "'causal relationship between the extraordinary circumstances' justifying equitable tolling and the untimely filing of [Plaintiffs'] Judiciary Law § 487 claim."  (Dismissal Order (Dkt. No. 48) at 19 (quoting Hizbullahankhamon, 255 F.3d at 75))  In their reply brief, however, Plaintiffs say that they are seeking reconsideration of that ruling.  (See Mot. for Recon. Reply (Dkt. No. 53) at 8)  However, "an argument omitted in a party's opening brief, and raised for the first time on reply, is waived."  Cobb v. Am. Urb. Radio Networks LLC, No. 24 CIV. 1305, 2025 WL 641437, at *3 n.2 (S.D.N.Y. Feb. 27, 2025); see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an . . . opening brief are waived" even if they are raised "in a reply brief."); Gonzalez v. United States, No. 17CV1093, 2019 WL 3408886, at *2 n.2 (S.D.N.Y. July 29, 2019) ("Arguments raised for the first time in reply briefs are waived.").  Because Plaintiffs' arguments for reconsideration of this Court's Judiciary Law ruling are not set forth in Plaintiffs' moving brief – but instead raised for the first time in Plaintiffs' reply brief – they will not be considered.

6

**DISCUSSION**

I.    **LEGAL STANDARD**

A.    **Motion for Reconsideration**

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) (footnote omitted). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).

"The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'"

<u>Id.</u> (omission in original) (quoting <u>S.E.C. v. Ashbury Capital Partners, L.P.</u>, No. 00 Civ. 7898, 2001 WL 604044, at \*1 (S.D.N.Y. May 31, 2001)).  "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment."  <u>Id.</u> (citing <u>Montanile v. Nat'l Broad. Co.</u>, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); <u>Shamis v. Ambassador Factors Corp.</u>, 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

## II.    ANALYSIS

### A.    Statutes of Limitations and the Continuing Wrong Doctrine

In the Dismissal Order, this Court held that the relevant starting point for the statute of limitations for all of Plaintiffs' claims was in 2014, because that is the latest date at which final judgments were entered against Plaintiffs in debt collection actions.  (<u>See</u> Dismissal Order (Dkt. No. 48) at 15)  In so holding, this Court rejected Plaintiffs' argument that "the limitations period should be measured from 'late 2019' – because 'Defendants continued to prosecute [debt collection] actions' against Tabar and Villasante until that time."  (<u>Id.</u> at 15 n.7 (alteration in original) (quoting Pltf. Mot. to Dismiss Opp. (Dkt. No. 39) at 14))

In moving for reconsideration, Plaintiffs argue that October 1, 2019, should be the starting point for the statute of limitations, because the Complaint pleads that Plaintiffs Tabar and Villasante suffered "injuries[,] including time lost and money spent on transportation," litigating Defendants' debt collection actions in Bronx County Civil Court up until that date.  (Pltf. Recon. Br. (Dkt. No. 51) at 6 (citing Cmplt. (Dkt. No. 1) ¶¶ 203-06))

In making this argument, Plaintiffs "seek[] solely to relitigate an issue already decided" by this Court.  (<u>See</u> Dismissal Order (Dkt. No. 48) at 15 n.7)  As discussed above, a reconsideration motion cannot be premised on an argument previously made and rejected.  <u>Davidson</u>, 172 F. Supp. 2d at 461.

In any event, Plaintiffs' argument has no merit. Plaintiffs appear to be invoking the "continuing wrong" doctrine, which "'is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act.'" Henry v. Bank of Am., 147 A.D. 3d 599, 601 (1st Dept. 2017) (quoting Selkirk v. State, 249 A.D.2d 818, 819 (3d Dept. 1998)). But the continuing wrong doctrine does not apply to Plaintiffs' FDCPA and GBL claims.

As to Plaintiffs' FDCPA claim, an "FDCPA violation occurs, triggering the statute of limitations, when an individual is injured by unlawful conduct." Benzemann v. Houslanger & Assocs., PLLC, 924 F.3d 73, 79 (2d Cir. 2019). "[C]ourts within the Second Circuit have not applied the continuing violation doctrine to FDCPA claims." Goodman v. Bd. of Managers of Harborview Condo., No. 22-CV-1813 (CS), 2023 WL 6977450, at *4 n.5 (S.D.N.Y. Oct. 23, 2023), appeal dismissed (Feb. 28, 2024). "The continued prosecution of a foreclosure or collection suit is not a continuing violation under the FDCPA – if the same alleged misrepresentation is repeated in court filings, the claim accrues on the date of the initial representation. A new FDCPA claim only arises if a new misrepresentation is alleged." Oliver v. U.S. Bancorp, No. 14-CV-8948 PKC, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015).

Here, as this Court noted in the Dismissal Order (see Dismissal Order (Dkt. No. 48) at 15), Plaintiffs' FDCPA claim accrued as to each Plaintiff in 2014, when default judgments were entered against them. (See Cmplt. (Dkt. No. 1) ¶¶ 97, 131, 183, 196) In seeking reconsideration, Plaintiffs do not allege any new misrepresentations but instead complain that Defendants engaged in the continued prosecution of a collection suit which caused them to spend time and money litigating that suit. (Pltf. Recon. Br. (Dkt. No. 51) at 6 ("[T]he Complaint well pleads that [Tabar and Villasante] traveled to the Bronx on October 1, 2019 (for the fifth time)

9

before prevailing, with their injuries including time lost and money spent on transportation – all

of which happened because Defendants insisted on continuing the prosecutions of their sham

collection suits.") (citing Cmplt (Dkt. No. 1) ¶¶ 203-06))  Where an FDCPA plaintiff merely

alleges the continued prosecution of a collection suit, however, the continuing wrong doctrine is

not applicable.  Oliver, 2015 WL 4111908, at *2 ("The continued prosecution of a foreclosure or

collection suit is not a continuing violation under the FDCPA[.]"); DeJesus v. BAC Home Loans

Servicing, LP, No. 13-CV-2864 KAM VVP, 2014 WL 4804999, *4 (E.D.N.Y. Sept. 26, 2014)

("[t]he established law in this Circuit does not support" plaintiffs' argument "that the fact that the

Foreclosure Action is ongoing requires a finding that their FDCPA claim is timely."); Scott v.

Greenberg, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *6-7 (E.D.N.Y. Mar. 31, 2017) (ruling

that plaintiff could not revive a time-barred FDCPA claim by citing defendant's pursuit of a

default judgment).

As to Plaintiffs' GBL claim, "GBL § 349 has a three[-]year statute of limitations,

and the cause of action accrues when the plaintiff first suffers injury as a result of the deceptive

act or practice."  Okocha v. HSBC Bank USA, N.A., 700 F. Supp. 2d 369, 375 (S.D.N.Y. 2010).

The continuing wrong doctrine may apply to a GBL § 349 claim "'[w]here [that] claim is based

on a series of allegedly deceptive acts[.]'"  DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh,

P.A., No. 15 CIV. 2259 (PGG), 2021 WL 3141672, at *7 (S.D.N.Y. July 26, 2021) (quoting Stanley

v. Direct Energy Servs., LLC, 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020)).  However, the

continuing wrong doctrine "'may only be predicated on continuing unlawful acts and not on the

continuing effects of earlier unlawful conduct.  The distinction is between a single wrong that

has continuing effects and a series of independent, distinct wrongs.'"  Kemp v. Regeneron

Pharms., Inc., 117 F.4th 63, 71 (2d Cir. 2024) (quoting Henry, 147 A.D. 3d at 601).

10

Here – as this Court noted in the Dismissal Order – Plaintiffs "do[] not allege that Defendants continued to prosecute debt collection actions against Plaintiffs in 2019." (Dismissal Order (Dkt. No. 48) at 15 n.7)  To the extent that Plaintiffs allege that they spent time and money litigating Defendants' 2013 and 2014 debt collection suits in state court until late 2019, these alleged "injuries" were part of the "'continuing effects of earlier unlawful conduct.'" Kemp, 117 F.4th at 71 (quoting Henry, 147 A.D. 3d at 601).  Accordingly, Plaintiffs have not pled an injury that occurred in 2019 that constitutes an "'independent, distinct wrong[],'" such that the statute of limitations was tolled until that time pursuant to the continuing wrong doctrine.  Id. (quoting Henry, 145 A.D. 3d at 601).

Plaintiffs argue, however, that in Seaman this Court held that time and money spent litigating Defendants' collection suits constitutes an injury. (See Pltf. Recon. Br. (Dkt. No. 51) at 6 (citing Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2, No. 18CV1781PGGBCM, 2023 WL 2975152, at *20 (S.D.N.Y. Mar. 13, 2023), report and recommendation adopted in part, rejected in part, No. 18CIV1781PGGBCM, 2023 WL 6290622 (S.D.N.Y. Sept. 27, 2023))  But the language cited by Plaintiffs addresses Article III standing, and whether the Seaman plaintiffs could demonstrate an injury in fact by pointing to, inter alia, the time and money they had spent obtaining orders vacating improperly obtained judgments.  See Seaman, 2023 WL 2975152, at *19-24; Seaman, 2023 WL 6290622, at *14-17.  The test for pleading an injury in fact sufficient to demonstrate Article III standing is different from the "independent, distinct wrong[]" standard that governs application of the continuing wrong doctrine.  Compare Onfroy v. L. Offs. of Geoffrey T. Mott, P.C., 751 F. Supp. 3d 195, 202 (E.D.N.Y. 2024) ("out-of-pocket expenses and lost time satisfy Article III's concrete-injury requirement when they are 'foreseeab[le]' consequences of the defendant's actions") (citing Bohnak v. Marsh & McLennan Companies,

Inc., 79 F.4th 276, 286 (2d Cir. 2023)) (second alteration in Onfroy) with Oliver, 2015 WL

4111908, at *2 ("[a] new FDCPA claim only arises if a new misrepresentation is alleged"); Kemp,

117 F.4th at 71 (New York's continuing wrong doctrine "'may only be predicated on continuing

unlawful acts and not on the continuing effects of earlier unlawful conduct.'") (quoting Henry,

145 A.D. 3d at 601).

Accordingly, this Court did not err in holding that the relevant statutes of

limitations for Plaintiffs' claims began running in 2014, when final judgments were entered

against Plaintiffs in Defendants' debt collection actions. (See Dismissal Order (Dkt. No. 48) at

15)

> ### B.     Equitable Relief

In seeking reconsideration, Plaintiffs also argue that this Court committed "clear

error" in not applying the Second Circuit's "usual method for calculating [the] timeliness of

claims where equitable tolling is warranted": the "stop-clock" method. (Pltf. Recon. Br. (Dkt.

No. 51) at 2 (citing Harper, 648 F.3d at 140-41))

Citing the Supreme Court's teaching in United States v. Ibarra, 502 U.S. 1, 4 n.2

(1991), the Second Circuit has stated that

> "[p]rinciples of equitable tolling usually dictate that when a time bar has been
> suspended and then begins to run again upon a later event, the time remaining on
> the clock is calculated by subtracting from the full limitations period whatever
> time ran before the clock was stopped."

Harper, 648 F.3d at 139 (quoting Ibarra, 502 U.S. at 4 n.2).

According to Plaintiffs, if this Court had properly applied the "stop-clock" method here, it would "have found [that] Plaintiffs had three years from the date of the CFPB announcement" to file their GBL claim. (Pltf. Recon. Br. (Dkt. No. 51) at 4)[6]

Reconsideration is not required under <u>Harper</u> and <u>Ibarra</u>, however, because the timeliness of Plaintiffs' GBL claim is not governed by federal law, but instead by New York law. <u>See Harper</u>, 648 F.3d at 139-42 (addressing the timeliness of a habeas filing under federal law). Where, as here, a party "'allege[s] [New York] state law claims, [courts] look[] to New York state cases' for the equitable tolling or estoppel law." <u>Koenigsberg v. Bd. Of Trs. of Columbia Univ. in City of New York</u>, No. 24-2519-CV, 2025 WL 1540252, at *2 (2d Cir. May 30, 2025) (summary order) (alterations added) (quoting <u>Koral v. Saunders</u>, 36 F.4th 400, 409 (2d Cir. 2022)); <u>see also Wood v. Mike Bloomberg 2020, Inc.</u>, No. 1:20-CV-2489-LTS-GWG, 2023 WL 5747343, at *6 (S.D.N.Y. Sept. 6, 2023) (noting that the <u>Erie</u> doctrine "requires federal courts to apply state substantive law – including statutes of limitations and associated tolling – where a state law claim is brought in federal court under diversity or supplemental jurisdiction").[7]

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" <u>Abbas</u>, 480 F.3d

---

[6] Although Plaintiffs do not state which of their claims should be tolled pursuant to the "stop-clock" method, they reference a three-year statute of limitations period. (<u>See</u> Pltf. Recon. Br. (Dkt. No. 51) at 2, 4-5) The three-year statute of limitations applies only to Plaintiffs' GBL claim. (<u>See</u> Dismissal Order (Dkt. No. 48) at 14-15 (noting that FDCPA claims have a one-year statute of limitations, GBL claims have a three-year statute of limitations, and Judiciary Law § 487 claims have a six-year statute of limitations)) This Court therefore concludes that Plaintiffs' equitable tolling/"stop-clock" arguments are limited to their GBL claim.

[7] Here, this Court is exercising supplemental jurisdiction over Plaintiffs' GBL claim pursuant to 28 U.S.C. § 1367.

at 642 (quoting <u>Doe v. Holy See (State of Vatican City)</u>, 17 A.D. 3d 793, 794 (3d Dept. 2005).[8]

"'Whether referred to as "equitable tolling," or "equitable estoppel," tolling is applied only in rare circumstances when the defendant's fraudulent conduct either conceals the existence of a cause of action or acts to delay Plaintiff from commencing a lawsuit.'" <u>DuBuisson</u>, 2021 WL 3141672, at *9 (quoting <u>Statler v. Dell, Inc.</u>, 841 F. Supp. 2d 642, 647-48 (E.D.N.Y. 2012)). "'Equitable estoppel is an extraordinary remedy' that precludes a defendant who has 'take[n] affirmative steps to prevent a plaintiff from bringing a claim . . . [from] assert[ing] the statute of limitations as a defense.'" <u>Endemann v. Liberty Ins. Corp.</u>, No. 22-1217, 2023 WL 4102245, at *1 (2d Cir. June 21, 2023) (summary order) (internal citations omitted) (alterations in original) (first quoting <u>Pulver v. Dougherty</u>, 58 A.D. 3d 978, 979 (3d Dept. 2009), then quoting <u>Zumpano v. Quinn</u>, 6 N.Y.3d 666, 674 (2006)).

"'Due diligence on the part of the plaintiff in bringing [an] action' . . . is an essential element of equitable relief." <u>Abbas</u>, 480 F.3d at 642 (alteration in <u>Abbas</u>) (quoting <u>Holy See</u>, 17 A.D. 3d at 796). "[T]he burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the [extraordinary circumstances] have ceased to be operational." <u>Simcuski v. Saeli</u>, 44 N.Y.2d 442, 450 (1978); <u>accord Abbas</u>, 480 F.3d at 642 ("[A] plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." (internal citations and quotation marks omitted)).

The New York Court of Appeals has explained that

[w]hether in any particular instance the plaintiff will have discharged his responsibility of due diligence in this regard must necessarily depend on all the

---

[8] "New York courts do not differentiate between equitable tolling and equitable estoppel." <u>DuBuisson</u>, 2021 WL 3141672, at *9 n.6 (citing <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 82-83 (2d Cir. 2002)).

> relevant circumstances. The length of the legislatively prescribed period of limitations is sometimes said to be relevant, and courts have held that in no event will the plaintiff be found to have exercised the required diligence if his action is deferred beyond the date which would be marked by the reapplication of the statutory period, i.e., that the length of the statutory period itself sets an outside limit on what will be regarded as due diligence.

Simcuski, 44 N.Y.2d. at 450-51.

As Simcuski makes clear, "the full statutory limitations period is the maximum amount of time plaintiffs have to file a claim after discovering [the] material facts giving rise to [their claim]." "[P]laintiffs are [not] always entitled to this full period" once the facts giving rise to equitable relief have ceased to exist. In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig., No. CV125120 (WHW) (CLW), 2016 WL 2901666, at *3 (D.N.J. May 18, 2016) (applying New York law) (emphasis in original); Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 443 (S.D.N.Y.) (Under New York law "[g]enerally, the outer limit for exercising due diligence would be the statute of limitations measured from the date when the facts giving rise to the estoppel have ceased to be operational."), aff'd, 579 F. App'x 7 (2d Cir. 2014) (summary order).

Where plaintiffs have not acted with due diligence in bringing their claims after the circumstances justifying equitable tolling have ended, courts applying New York law frequently find those claims untimely, regardless of how much time remained in the statutory period once the limitations clock began to run. See, e.g., Horn v. Politopoulos, 628 F. App'x 33, 35-36 (2d Cir. 2015) (summary order) (holding that, under the three-year statute of limitations applicable under New York law, "plaintiffs fail[ed] to show that they acted with the required due diligence in bringing an action 'after the facts giving rise to the estoppel have ceased to be operational'"; finding action time-barred even though lawsuit was filed two years and eight months into the total untolled limitations period of three years) (quoting Simcuski, 44 N.Y.2d at 450); Koenigsberg v. Bd. of Trs. of Columbia Univ. in City of New York, No. 23 CIV. 1044

(PGG), 2024 WL 3876553, at *8 (S.D.N.Y. Aug. 20, 2024) (holding that New York law claim subject to a three-year statute of limitations was time-barred because it was not brought "within a reasonable period of time" after the circumstances justifying equitable tolling ended; action was brought approximately one year into the total untolled limitations period of three years), aff'd, 2025 WL 1540252 (2d Cir. May 30, 2025) (summary order); In re: Lamictal Indirect Purchaser, 2016 WL 2901666, at *2-3 (holding that New York law claim subject to a four-year statute of limitations was time-barred because it was not brought "within a reasonable period of time" after the circumstances justifying equitable tolling ended; action was filed three years and ten months into the total untolled limitations period of four years); Tanz v. Kasakove, No. 08 Civ. 1462, 2008 WL 2735973, *1 (S.D.N.Y. July 7, 2008) (dismissing New York law claim subject to a three-year statute of limitations as time-barred; holding that the claim was not pursued with "sufficient alacrity" after the circumstance justifying equitable tolling had ended; claim was brought approximately one year and three months into the total untolled limitations period of three years).

In the Dismissal Order, this Court held that (1) "equitable tolling applies to Plaintiffs' . . . GBL claim[],"[9] but that (2) Plaintiffs' GBL claim is nonetheless time-barred because it was not brought "'within a reasonable period of time' after the 'extraordinary circumstances' end[ed]." (Dismissal Order (Dkt. No. 48) at 19-21 & n.11 (quoting Abbas, 480 F.3d at 642)) Although the Dismissal Order quotes Harper in discussing the general principles governing equitable tolling (see Dismissal Order (Dkt. No. 48) at 12-14) – in holding that

---

[9]  It is well established that GBL claims may be subject to equitable tolling.  See, e.g., DuBuisson, 2021 WL 3141672, at *9 (considering merits of an equitable tolling argument in connection with GBL §§ 349-50 claim); Martin Hilti Family Tr. v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 470-71 (S.D.N.Y. 2015) (same).

Plaintiffs had not filed their GBL claim within "a reasonable amount of time" after learning of their right to sue – the Court relied on <u>Abbas v. Dixon</u>, 480 F.3d 636 (2d Cir. 2007), which applies equitable tolling/equitable estoppel principles under New York law.  (<u>See</u> Dismissal Order (Dkt. No. 48) at 20-21 (quoting <u>Abbas</u>, 480 F.3d at 642))

Here, Plaintiffs were on notice of their GBL claim at least by September 18, 2017, but the Complaint was not filed until July 28, 2020 – approximately two years and ten months later.  (Dismissal Order (Dkt. No. 48) at 20)  As the case law cited above demonstrates, under New York law, a court may dismiss a claim as time-barred where – although the statute of limitations was tolled pursuant to equitable tolling – plaintiff did not bring his claim within a reasonable amount of time after learning of his right to sue – even where the claim is brought within the total untolled limitations period.  The delay here was not reasonable, particularly given that Plaintiffs' claims are predicated on the same facts and legal theories set forth in the <u>Seaman</u> and <u>Bifulco</u> actions, which were filed on February 27, 2018, and August 23, 2018, respectively.  (<u>See</u> <u>id.</u> at 21)  Accordingly, this Court did not err in dismissing Plaintiffs' GBL claim as time-barred.[10]

---

[10]  As discussed above, Plaintiffs' equitable tolling/"stop-clock" arguments are directed at their GBL claim.  But application of the stop-clock method to Plaintiffs' FDCPA claim would not render that claim timely.  As to the FDCPA claim, even if the "stop-clock" method were applied, Plaintiffs were "on notice of their claims at least by September 18, 2017[.]" (Dismissal Order (Dkt. No. 48) at 20)  Given that FDCPA claims have a one-year statute of limitations, any such claim became time-barred after September 18, 2018, 15 U.S.C. § 1692k(d), and the Complaint was not filed until July 28, 2020.

As to Plaintiffs' Judiciary Law § 487 claim, as discussed above, Plaintiffs did not seek – in their moving brief – reconsideration of the Court's statute of limitations ruling concerning this claim.  While Plaintiffs seek reconsideration regarding this claim in their reply brief, because they failed to address the issue in their moving brief, they have waived the argument.  <u>Cobb</u>, 2025 WL 641437, at *3 n.2; <u>JP Morgan Chase Bank</u>, 412 F.3d at 428; <u>Gonzalez</u>, 2019 WL 3408886, at *2 n.2.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for reconsideration is denied.  The

Clerk of Court is directed to terminate the motion (Dkt. No. 50).

Dated:  New York, New York                    SO ORDERED.
            September 24, 2025

_____
Paul G. Gardephe
United States District Judge

18